Good morning, Your Honors. May it please the Court, Elizabeth Prevett for Appellant Corey Ridolfi. The issue in this case is whether or not there was sufficient evidence of constructive possession to find Mr. Ridolfi guilty beyond a reasonable doubt of being a felon in possession of two firearms and of knowingly possessing the same two stolen firearms. There was no evidence of actual possession in this case. The government argued at trial that on November 28, 2011, Mr. Ridolfi possessed two stolen firearms that were in the trunk of his cousin Jared Lemay's car as he sat in the driver's seat and Mr. Lemay sat in the passenger seat of Mr. Lemay's car at 4.15 in the morning. Now, in order to show constructive possession, the government has to prove that a person knowingly has the power and intention at a given time of exercising dominion and control over the firearm, whether directly or through another. This Court has counseled caution in assessing constructive possession cases based upon circumstantial evidence where there's evidence of other criminal activity and evidence of the participation by others. As the 11th Circuit has put it, these circumstances present a danger of guilt by intuition. The problem is that propensity evidence and association evidence can fill in the evidentiary gaps and prevent a true individualized finding of guilt based upon the specific offense of gun possession. Wasn't it clear, though? I mean, the fact finder could easily find that the stuff in the trunk was the loot from a joint robbery expedition between the two guys. But the... That the... The whole trunk, other than the tire and the jack, was filled with the loot. Not the whole... I wouldn't say the whole trunk. Well, most of it was... There was a lot of loot in there that was identified as coming from the houses that had been burglared. Yeah, but... Including the two guns. Pardon? Including the two guns. Well, I would disagree about the conclusion about the two guns. What the... In capsule form, briefly, the government's evidence was that on November 9th, Mr. Rodolphe, accompanied by Mr. Lemay, went into a pawn shop and Mr. Rodolphe sold what... Jewelry that was stolen at the same time and from the same place where the guns were stolen. And that is Emma Sartini's house on November 8th or November 9th. Then 19 days later, Mr. Rodolphe is found in the passenger seat in Mr. Lemay... I mean, I'm sorry, in the driver's seat in Mr. Lemay in the passenger seat of a car, of Mr. Lemay's car. The guns are in the trunk. Piled on top of the guns are piles and piles of other items that were stolen from the house across the street and piles of clothes. We don't know where those clothes came from. There was also a replica handgun and a holster that was stolen on November 16th. And the reason that they were found there, or that is that Mr. Rodolphe and Mr. Lemay was found there, was that there was a call by another homeowner on that same street saying that someone had pressed his doorbell at that time. So the guns were stolen in the first robbery? So the guns were stolen, but what's critical, I think, for the finding of constructive possession of the firearm is what role, if any, did Mr. Rodolphe have with respect to those firearms? Now, as... About that, Counselor, can I... I just want to try to see if I can separate two questions and see if you agree that they can be separated. Leaving aside for a second the question of his knowledge of the firearms and his knowledge of whether they were stolen, all right? So assume that for purposes of the question that I would like to ask, that the jury could have found sufficient knowledge of the firearms, that they were in the trunk, and that they were stolen. Just set that all to the side. In terms of constructive possession, do you dispute that his being found in the driver's seat would, under those circumstances, give him sufficient dominion and control? Yes, I do. Okay. He didn't own the car. There's no evidence... I asked the wrong question. Do you dispute that the jury could have inferred dominion and control? By Mr. Rodolphe? Yes. Yes, they do. Yes. Pardon? Why? Well, first... Most cars, for years now, have had a little button up in front of the driver's seat, and you just press it, and the trunk comes up. There's no evidence of how to get into the trunk. There's no... There may not be, but jurors don't leave their common sense at home. I don't think that you can infer from... If you look at the photographs of the car, there's sort of a button right above where the trunk is, and often there's a way to move that logo and actually put a key into the... Yeah, but even cars with keys... My car has a button and a key, and it's much easier for the driver to get the trunk open just sitting there. I don't believe that a jury would be entitled to make... This is a 25-year-old car. Pardon? I mean, it's an old car. This has been a common feature for a very long time. So you put that together with the other evidence, and why isn't that sufficient? Yes, I just... I don't believe that there's a fair inference from no evidence to how to get into the car, and whether or not that button could work. So even if he had to go use the key to get into the trunk, he's the one with the key, right? Is this a car that uses a key? Again, there was no evidence about actually... No, that's fair, but can I put a finer point on the question? Because I'm trying to actually understand your argument a little better. If the firearms were in the back seat and there were no question of access to them, would you then concede the point of dominion and control, assuming knowledge and all those other things are satisfied? Well, if... If you can't answer that one, can I try the front seat? I'm just trying to figure out exactly what you're... I think that this Court's precedent on constructive possession gives guidance as to what can count as a fair inference from circumstantial evidence to constructive possession. So, for example, where a defendant has exclusive dominion and control of the area where the gun is found, that can suffice. Where a firearm is pointed in the direction of one defendant, when you have a number of potential people who may be the person in control of the gun, when it's pointing toward one person such that there's easy access to the gun, then that can also... We have a drug case that I remember where it was a conspiracy. There were a number of people standing together, and some yards away, I believe, in a dumpster or a trash barrel is where all the machine guns were. And this kind of argument was made, and we had no problem with that, that where you have people involved in this kind of criminal conduct, the jury could infer that they wouldn't be brought into it if they weren't willing to give each other knowledge of where the weaponry was and all of that. So I don't know where you're going with the joint possession argument. I thought you were trying to say that... I thought the point of your argument was the potential inability to get into the trunk is what makes this one different. And I'm just trying to determine if there's something else or if that's what it is. That's one factor. So what's the other one? Other factors are that there was no evidence whatsoever that, for example, he was in Emma Sartini's house earlier on November 9th, that he loaded the trunk, that there was no... This all goes to knowledge, not dominion and control. Part of it is, yeah. I mean, that's fine. And also the amount of items that were piled on top of the guns, the guns were zipped in cases. There was no evidence that these guns were used in the burglary of any or attempted burglary of the house on Gorchwood. Everything that was on top of the guns was stuff from other houses. Not everything. There were tons of clothes and nobody had any idea where those came from. There were no fingerprints inside. There was no sighting of Mr. Rodolphe anywhere near the trunk. And the guns had been out... At least one of the guns had been out of the trunk since the robbery. Significantly, that was in Mr. LeMay's control, at Mr. LeMay's girlfriend's house, where apparently he was storing that. And also it was in Mr. LeMay's car. And I think the... So we know it had gone from the house to the car. To Mr. LeMay's car. Yes, to another house and then back into the car. It had gone from... Well, yes. And we don't know who it was. There's no evidence as to who transported that. Thank you, counsel. May it please the court, Donald Lockhart for the government. So the evidence that Mr. Rodolphe was involved in these serial burglaries, including the first one at Emma Sartini's home, goes not just to the issue of knowledge, we think, but also to the issue of his ability to access the guns. Our whole point at trial and on appeal is that these are two guys who are in a robbery... Burglary business together. The evidence, or so a rational jury could find, is that they're stealing stuff from houses and then keeping it in the trunk of this car. That being the case, as partners in crime, they have, a jury could find, joint access to the items that they've stolen and kept in the trunk. Now, as to the question of Rodolphe being in the driver's seat of the car at 4.15 in the morning on November 28th, it's not just that he's caught in the seat as the driver, there's actually evidence that he drove to that location. Mr. Lemay makes a statement to the police officer, which comes in as evidence. Can I just ask you a question about that? Assuming, again, knowledge, he had the requisite knowledge that the firearms were in the trunk, is that act of his driving the car with the firearms in the trunk sufficient by itself to infer dominion and control? Oh, yes. There doesn't have to be some other additional intent to pick the gun up or anything like that? No, the defendant doesn't, we don't have to show that the defendant actually had the desire, I guess is the word, to pick up the gun, merely that he knew of the presence of the gun and had the ability and intention under certain circumstances to control it, not that at a defined moment he was desiring to control it, which is a little bit philosophical distinction, but an important one, perhaps. Here, that distinction is sort of swamped by the evidence we submit, because if you believe that there was evidence that he was involved in the actual theft of those guns from the Sartini house on November 8th, 9th, and we believe the evidence supports that, then it's really a small step to get to the point where you say, well, if he's keeping these guns with his buddy in the trunk of the car, couldn't a rational jury just infer that they have access to the items in the trunk, regardless of whether cars these days have switches to activate the trunk? I mean, I haven't seen a car in my lifetime that doesn't have the ability to pop the trunk from the inside, but even if you put aside that factor, the evidence suggests that they're going in and out of this trunk. Remember that the Lincourt house is located directly across the street from where the car is parked at 415 in the morning. The evidence shows quite clearly that they burgled that house moments before the police arrived. They took the spoils of that burglary and they stuck it where? In the trunk. Now, you could say, well, isn't it possible that Mr. Rodolphe was just waiting in the car as Mr. Lemay went into the Lincourt house, burgled it, and put the stuff in the trunk, but the jury could easily have concluded that they were together on that burglary. After all, Mr. Rodolphe is there with him. He was apparently involved in the Sartini house burglary as well. So it's sort of a natural inference that when they robbed or burgled the Lincourt house and put this stuff in the trunk, the guns were right there next to the items that they had just stolen from the Lincourt house. So that gets you your access and control, regardless of whether the mechanism to pop the trunk was working that day. The court has no further questions. We'll rest on our brief. Thank you both.